E. LUTHER MELIN v. ANNA M. ARONSON.
MARQUETTE NATIONAL BANK AND ANOTHER, GARNISHEES.[1]

May 19, 1939.

No. 32,085.

[1]Reported in 285 N. W. 830.

*E. Luther Melin, pro se.*
*Lynn S. Helgerson,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff appeals from a judgment; also from two orders, one made on December 19, 1938, the other January 14, 1939. The essential facts are: On December 8, 1938, plaintiff filed in the office of the clerk of the municipal court of Minneapolis an affidavit for garnishment. About two hours later the garnishment summons was served upon the garnishees. Later, on the same day, the summons and complaint in the main action together with copy of the garnishment summons with notice to defendant were personally served upon defendant. The service in each instance was made by a private person. Neither in the garnishment proceedings nor in the main action was the summons placed in the hands of the sheriff nor with "either of the municipal court officers of the city." Proof of service upon the garnishees does not indicate the name or

otherwise identify the person upon whom service for the respective garnishees was made, the one making the service only stating that "he served the within summons on the within named garnishees by delivering a copy to officers of the said garnishees, and paid each in advance the sum of $1.12 fees for one day's attendance and mileage."

Time of disclosure was fixed in the garnishment summons as December 17, but upon plaintiff's request was postponed to December 19, at which time defendant made her special appearance and moved for dismissal of the garnishment proceedings. The basis for her motion was that no summons in the main action had been "issued" at the time the affidavit for garnishment was filed. She also claimed that the affidavit of service of the garnishment summons was defective in that the identity of the persons upon whom service was made was not shown. But in her affidavit (the basis for her "special appearance" to dismiss) she states that "notice to defendant conclusively shows that service of the garnishment summons had been made upon both garnishees prior to the service of the summons in the main action." The persons representing the respective garnishees appeared at the time of disclosure but were not heard, and no disclosure was had because the court granted defendant's motion to dismiss the garnishment. Its reason for so doing was that "no summons [in the main action] was 'issued' within the meaning of said term at the time said affidavit of garnishment was filed, or at the time service of said garnishment notice was served upon the garnishees," and therefore it ordered the garnishees "discharged from any further liability under said garnishment." Judgment pursuant thereto was entered December 21.

The garnishees have in no manner questioned the validity of the service upon them. Defendant alone took in hand this issue, and only she has made any appearance here.

■ As the summons in the main action was personally served upon defendant, it follows that as to her the court thereby acquired jurisdiction of her person. Under such circumstances, the rule is that where jurisdiction is obtained of the person of the defendant in the main action the steps taken to bring in the garnishee are not jurisdictional as to him. And so also where the garnishee voluntarily

appears and discloses he thereby waives defects in the garnishee affidavit and summons. Irregularities taking place prior thereto are not jurisdictional. 3 Dunnell, Minn. Dig. (2 ed. & Supps.) § 3961, and cases under notes 74 and 75; Webster Mfg. Co. v. Penrod, 103 Minn. 69, 114 N. W. 257; Dahl v. Neib, 180 Minn. 119, 230 N. W. 476; Chapman v. Foshay, 184 Minn. 318, 321, 238 N. W. 637. But it does not follow that thereby defendant is prevented from taking advantage of such defects if he acts promptly so that waiver of defects may be said to enter into the case. This is well illustrated by Webster Mfg. Co. v. Penrod, *supra.* Here defendant acted promptly.

The statute, 3 Mason Minn. St. 1938 Supp. § 9356, provides, so far as here material, that garnishment may issue "at the time of issuing the summons" in the main action, "or at any time during the pendency of the action, or after judgment therein." So what remains for consideration is whether the court was right in holding that the summons in the main action had not "issued" at the time of service of the garnishment summons. For plaintiff it is claimed that by making out the papers and handing them to a private person for service he thereby caused to be "issued" the summons in the main action. It will be noted that the statute, 2 Mason Minn. St. 1927, § 9199, provides that an action is deemed begun "when the summons is served on him" or is "delivered to the proper officer for such service." As applied to garnishment, "a garnishee summons is issued when delivered by the plaintiff, or his attorney, to the proper officer for service upon the garnishee, and, when the writ is sent to the officer by mail, delivery is not completed until received by him." Webster Mfg. Co. v. Penrod, 103 Minn. 69, 114 N. W. 257. In Borgen v. Corty, 181 Minn. 349, 232 N. W. 512, an attachment case, it was held: "To constitute the issuance of a summons it must be either served or delivered to the proper officer for service." In Chapman v. Foshay, 184 Minn. 318, 320, 321, 238 N. W. 637, 639, another garnishment case, it was held that:

"The making out of the summons [in the main action] and handing it to a clerk in the office of plaintiff's attorneys, with intention

to have it served, was not sufficient. * * * The meaning of the words 'issuance of the summons,' as found in the statute governing garnishments and as found in the statute governing attachments, is the same."

As to the principle involved, we can see no distinction between the cited cases and the one here presented. While this construction may seem rather technical (see 16 Minn. L. Rev. 441, *et seq.*) yet in view of our prior decisions we think they should be followed rather than limited or overruled.

■ "The doctrine [*stare decisis*], wise or unwise in its origin, has worked itself by common acquiescence into the tissues of our law. It is too deeply imbedded to be superseded or ignored." So wrote Mr. Justice Cardozo in Cullings v. Goetz, 256 N. Y. 287, 291, 176 N. E. 397, 398.

We think the quotation made is especially applicable here by reason of Minn. Const. art. 6, § 14, which provides that "legal pleadings and proceedings in the courts of this state shall be under the direction of the legislature." The particular phrase employed, "issuance of the summons," has been interpreted in many of our cases, yet the legislature has not seen fit to alter the interpretation this court has placed upon this language. So it seems reasonably certain that as thus interpreted the legislature intended it should be.

■ Plaintiff seeks to make much of the fact that service was made by an attorney at law; that he being an "officer of the court" should stand in a better position than an ordinary private person. We do not think this helps him at all. There is no statutory grant making an attorney a "proper officer" for the service of summons. In cases where an attorney has served the summons his act in so doing has been classified the same as if served by any other private citizen not a party to the cause.

What has been said disposes of the appeal. The two orders, if appealable at all, fall with an affirmance of the judgment.

Judgment affirmed.

MR. JUSTICE HILTON, being incapacitated by illness, took no part.

MR. JUSTICE LORING took no part.